**POULIN | WILLEY | ANASTOPOULO**
Eric M. Poulin (California Bar No. 298476)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email:
      eric@akimlawfirm.com
      blake@akimlawfirm.com
      pauld@akimlawfirm.com

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROBERTA SINICO, individually and on behalf of all others similarly situated,<br><br>          *Plaintiff*,<br><br>          v.<br><br>LYONS MAGNUS, LLC<br><br>TRU ASEPTICS, LLC<br><br>          *Defendants*. | Civil Action No. _____<br><br>**JURY TRIAL REQUESTED** |

COMES NOW, Plaintiff Roberta Sinico, on behalf of herself and others similarly situated (collectively, "Plaintiffs", "Plaintiff") for its Complaint against Lyons Magnus, LLC and Tru Aseptics, LLC ("Defendants") states and alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action a result of Defendants' negligent failure to ensure the quality of their products. This negligent oversight led to the recall of certain beverages,

liquid coffee, nutritional shakes, and other supplements due to *Cronobacter Sakazakii* bacteria contamination concerns. Recalled products included in products labeled under the brands Oatly, Stumptown, Glucerna, Intelligentsia, Aloha, Kate Farms, and Premier Protein.

## PARTIES

2.     Plaintiff is a resident of New Castle, Delaware. Ms. Sinico purchased and consumed a Vanilla flavored supplement produced by Defendant on or around August 15, 2022.

3.     Defendant, Tru Aseptics, LLC, is a subsidiary food service corporation wholly owned by Lyons Magnus LLC, with its headquarters in Beloit Wisconsin, located at 2924 Wyetta Drive, Beloit, Wisconsin 53511-3964.

4.     Defendant, Lyons Magnus LLC, is a food service corporation with its headquarters in Fresno, California. Lyons Magnus' principal place of business is 3158 East Hamilton Avenue Fresno, CA 93702.

## JURISDICTION AND VENUE

5.     Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from Defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).

6.     This District Court has personal jurisdiction over Defendants as the Defendant's principal place of business falls within the Eastern District's boundaries.

7.     Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## **BACKGROUND FACTS**

8.     Defendants manufacture, market, advertise, label, distribute, and sell protein shakes, dairy alternatives, nutritional shakes, and other nutritional supplements throughout the United States, including in this district.

9.     The Defendants' products (hereinafter "Protein") at issue include, but are not limited to:[1]

- Lyons Ready Care Thickened Dairy Drink- Moderately Thick/Honey Consistency

- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Butter Pecan

- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Dark Chocolate

- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Vanilla

- Lyons Care Thickened Dairy Drink- Mildly Thick, Nectar Consistency

- Lyons Barista Style Almond Non-Dairy Beverage

- Lyons Barista Style Coconut Non-Dairy Beverage

- Lyons Barista Style Oat Non-Dairy Beverage

- Pirq Plant Protein Decadent Chocolate

- Pirq Plant Protein Caramel Coffee

- Pirq Plant Protein Golden Vanilla

- Pirq Plant Protein Very Strawberry

- Glucerna Original 8 fl. oz Tetra Carton 24 Count Club Case

---

[1] LYONS MAGNUS VOLUNTARILY RECALLS 53 NUTRITIONAL AND BEVERAGE PRODUCTS DUE TO THE POTENTIAL FOR MICROBIAL CONTAMINATION LYONS MAGNUS VOLUNTARILY RECALLS 53 NUTRITIONAL AND BEVERAGE PRODUCTS DUE TO THE POTENTIAL FOR MICROBIAL CONTAMINATION (2022), https://www.prnewswire.com/news-releases/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-to-the-potential-for-microbial-contamination-301595828.html (last visited Aug 2, 2022).

- Aloha Chocolate Sea Salt Plant-Based Protein

- Aloha Coconut Plant-Based Protein

- Aloha Vanilla Plant-Based Protein

- Iced Coffee Plant Based Protein

- Intelligentsia ColdCoffee

- Intelligentsia Oat Latte

- Oatly Oat-Milk Barista Edition

- Premier Protein Chocolate

- Premier Protein Vanilla

- Premier Protein Café Latte

- MRE Cookies and Cream Protein Shake

- MRE Milk Chocolate Protein Shake

- MRE Salted Caramel Protein Shake

- MRE Vanilla Milk Shake Protein Shake

- Stumptown Cold Brew Coffee with Oat Milk Original

- Stumptown Cold Brew Coffee with Oat Milk Horchata

- Stumptown Cold Brew Coffee with Oat Milk Chocolate

- Stumptown Cold Brew Coffee with Cream and Sugar Chocolate

- Stumptown Cold Brew Coffee with Cream and Sugar Original

- Imperial Med Plus 2.0 Vanilla Nutritional Drink

- Imperial Thickened Dairy Drink- Moderately Thick/Honey Consistency

- Imperial Thickened Dairy Drink- Mildly Thick/Nectar Consistency

- Imperial Med Plus NSA 1.7 Vanilla Nutritional Drink

10.     Defendants state that the supplements and products that its sells are "support health", "nutritional", and often "alternatives" to other products, such as dairy.[2]

11.     Defendants' packing and labeling further emphasize quality and safe ingredients that are suitable for consumption by physically vulnerable persons, young children, and those who have specific dietary restrictions or seek a healthier lifestyle.

## FACTUAL ALLEGATIONS

12.     At all times relevant, Defendants knew or should have known that the Protein, Supplements, Additives, and Drinks contained harmful bacteria, had a risk of containing harmful bacteria, or were not sufficiently tested for the presence of bacteria *Cronobacter Sakazakii*. During this time, Defendant Defendants omitted any reference to the presence or risk of presence of harmful bacteria.

13.     Defendants knew or should have known the risks that *Cronobacter Sakazakii* poses to humans, particularly the elderly, very young, and immunocompromised. Defendants should have known that the standards for food safety have become increasingly stringent in recent

---

[2] Glucerna original shake: Diabetic Snack Replacement shake, GLUCERNA (2022), https://glucerna.com/nutrition-products/glucerna-shakes-rich-chocolate (last visited Aug 2, 2022). ;

Oatmilk Chilled, OATLY!, https://us.oatly.com/products/oatmilk-chilled (last visited Aug 2, 2022).

CHOCOLATE PROTEIN SHAKE WITH ENERGY & IMMUNE SUPPORT PREMIER PROTEIN, https://www.premierprotein.com/products/chocolate-energy (last visited Aug 2, 2022).

years. Further, Defendants should have know the dangers of *Cronobacter Sakazakii,* due to recent powder supplement and food contaminations.

14.     Defendants knew or should have known that it owed consumers a duty of care to prevent, or at the very least, minimize the presence, or risk, of bacteria in the Protein, Supplements, Additives, and Drinks.

15.     Defendants knew or should have known that it owed a duty of care to consumers to adequately test for bacteria, and other contaminants, in the Protein, Supplements, Additives, and Drinks.

16.     Defendants knew that consumers purchased the Protein, Supplements, Additives, and Drinks based on the reasonable expectations that Defendants manufactured the Protein, Supplements, Additives, and Drinks to the highest standards to be safe and healthy for consumption by persons of all ages, particularly those seeking a health supplement and immunocompromised. Defendants knew or should have known that consumers would reasonably infer that Defendants would hold the Protein, Supplements, Additives, and Drinks to the highest standards for preventing the presence or risk of bacteria.

17.     On August 1, 2022, Defendants recalled 53 products due to potential bacterial contamination. Particularly, the bacteria *Cronobacter Sakazakii* were mentioned as a possible contaminant.[3]

18.     The Food and Drug Administration ("FDA") and Center for Disease Control ("CDC") have declared bacteria, particularly *Cronobacter Sakazakii*, to be particularly harmful to all

---

[3] Wynne Davis, LYONS MAGNUS RECALLS 53 PRODUCTS INCLUDING ALTERNATIVE MILKS AND PROTEIN SHAKES NPR (2022), https://www.npr.org/2022/08/02/1115147605/lyons-magnus-protein-coffee-milk-products-recall (last visited Aug 2, 2022).

ages of persons, particularly those seeking a health supplement and the elderly, noting that death is often possible.[4]

19.     Exposures to *Cronobacter Sakazakii* can lead to death in persons of all ages, particularly the immunocompromised, children, and the elderly.[5]

20.     Many of Defendants' products are marketed to all ages of persons, particularly those seeking a health supplement, children, and the physically vulnerable.

21.     Despite the known risks of *Cronbacter Sakazakii*, Defendants have recklessly and/or knowingly sold the Protein Supplements without disclosing the possible contamination.

22.     Additionally, Defendants knew or should have known that possible consumers would drink or administer these sorts of supplements daily, often repeatedly, thus compounding the possible exposures to *Cronobacter Sakazakii*.

23.     Defendants ' omissions are material, false, misleading, and reasonably likely to deceive the public. This is true especially considering the long-standing campaign that markets protein shakes, nutritional shakes, and dairy alternatives, as healthy, safe, and high quality as to induce customers, such as Plaintiff, to purchase the products.

## **CLASS ACTION ALLEGATIONS**

24.     Plaintiff brings this action on behalf of themself and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class.

---

[4] Cronobacter, CENTERS FOR DISEASE CONTROL AND PREVENTION (2022), https://www.cdc.gov/cronobacter/index.html (last visited Aug 2, 2022).

Center for Food Safety and Applied Nutrition, INVESTIGATION OF CRONOBACTER INFECTIONS FROM POWDERED INFANT FORMULA U.S. FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022 (last visited Aug 2, 2022).

[5] Id.

**The Class:**

All persons in the United States who purchased the Recalled Protein, Supplements, Additives, and Drinks for household or business use, and not for resale.

25.     Excluded from the Class are Defendants, both Tru Aseptics LLC and Lyons Magnus LLC, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

26.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

27.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

28.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a) Whether Defendants engaged in the conduct alleged herein;

(b) Whether Defendants owed a duty of care to Plaintiff and the Class;

(c) Whether Defendants knew or should have known that the Protein, Supplements, Additives, and Drinks contained, or may contain, *Cronobacter Sakazakii*;

(e) Whether Defendants wrongfully represented and continues to represent that the Protein, Supplements, Additives, and Drinks are natural and safe for human physically vulnerable persons consumption;

(f) Whether Defendants wrongfully represented and continues to represent that the Protein, Supplements, Additives, and Drinks are healthy

(g) Whether Defendants wrongfully represented and continues to represent that the Protein, Supplements, Additives, and Drinks are natural and/or healthy;

(h) Whether Defendants wrongfully represented and continues to represent that the Protein, Supplements, Additives, and Drinks are appropriate for consumption by various of all ages of persons, particularly those seeking a health supplement;

(i) Whether Defendants wrongfully represented and continues to represent that the manufacturing of its Protein, Supplements, Additives, and Drinks is subjected to rigorous standards, including testing for *Cronobacter Sakazakii*;

(j) Whether Defendants wrongfully failed to disclose that its Protein, Supplements, Additives, and Drinks contained, or may contain, *Cronobacter Sakazakii* and/or;

(k) Whether Defendants' representations in advertising, warranties, packaging and/or labeling are false, deceptive and misleading;

(l) Whether those representations are likely to deceive a reasonable consumer;

(m) Whether a reasonable consumer would consider the presence, or risk of, *Cronobacter Sakazakii,* as a material fact in purchasing Protein, Supplements, Additives, and Drinks;

(n) Whether Defendants had knowledge that those representations were false, deceptive and misleading;

(o) Whether Defendants continues to disseminate those representations despite knowledge that the representations are false, deceptive and misleading;

(p) Whether representations that a product is healthy, of superior quality, nutritious and safe for consumption and does not contain *Cronobacter Sakazaskii*, to a reasonable consumer;

(q) Whether Defendants' representations and descriptions on the labeling of the Protein, Supplements, Additives, and Drinks are likely to mislead, deceive, confuse or confound consumers acting reasonably;

(r) Whether Defendants breached its express warranties;

(s) Whether Defendants breached its implied warranties;

(t) Whether Defendants engaged in unfair trade practices;

(u) Whether Defendants engaged in false advertising;

(v) Whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

(w) Whether Defendants was unjustly enriched by its charging and failure to fully refund excessive auto insurance premiums;

(x) Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(y) Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(z) The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

29.     Plaintiff's claims are typical of the claims of other members of the Class because, among other things, all such members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

30.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class they seek to represent. Plaintiff has retained

counsel competent and experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

## Superiority: Fed. R. Civ. P. 23(b)(3)

31.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

32.     Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

## Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

33.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

## Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

34.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### FOR A FIRST COLLECTIVE CAUSE OF ACTION
### Breach of Express Warranty
### (Plaintiff and Other Members the Class)

35.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

36.     Plaintiff brings this count on behalf of herself and other members of the Class.

37.     Defendants produced, marketed, and sold the Protein, Supplements, Additives, and Drinks into the stream of commerce with the intent that the Protein, Supplements, Additives, and Drinks would be purchased by Plaintiff and the Class.

38.     Defendants expressly represented and warranted that the Protein, Supplements, Additives, and Drinks were healthy and safe for consumption by all persons, particularly those seeking a health supplement.

39.      Defendants made these express warranties regarding the Protein, Supplements, Additives, and Drinks' quality, ingredients and fitness for consumption in writing on the Protein, Supplements, Additives, and Drinks' packaging and labels through its website, advertisements and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Protein, Supplements, Additives, and Drinks.

40.     Defendants' advertisements, warranties and representations were made in connection with the sale of the Protein and Supplement to Plaintiff and the Class. Plaintiff and the Class relied on Defendants' advertisements, warranties and representations regarding the Protein,

Supplements, Additives, and Drinks in deciding whether to purchase the Protein, Supplements, Additives, and Drinks.

41.     Defendants' Protein, Supplements, Additives, and Drinks do not conform to Defendants' advertisements, warranties, and representations in that Defendant's products are not safe or appropriate for consumption by physically vulnerable persons and young children, and contain, or may contain levels of dangerous bacteria as reflected in their Recall Notice.

42.     Defendants were on notice of this breach as they were aware of the possibly included *Cronobacter Sakazakii* bacteria in the Protein, Supplements, Additives, and Drinks as reflected in their Recall Notice.

43.     The inclusion of unsafe levels of *Cronobacter Sakazakii* is material because unsafe levels of these toxins rendered Defendants' Protein and Supplement products dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering the Protein and Supplement worthless or a significantly lesser value than a safe to consume product.

44.     Plaintiff and the Class would not have purchased the lesser value Protein, Supplements, Additives, and Drinks had they known of the risk of sickness in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

45.     Privity exists because Defendants' expressly warranted to Plaintiff and the Class through the warranting, packaging, marketing and labeling that the Protein, Supplements, Additives, and Drinks were natural and perfect for consumption and by failing to make any mention of *Cronobacter Sakazakii* or other harmful ingredients. All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff and the other members of the Class.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Protein, Supplements, Additives, and Drinks that were worth less than the price they paid given the risk and/or presence of harmful ingredients and that they would not have purchased at all had they known of the risk and/or presence of *Cronobacter Sakazakii*, and/or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

47.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### (Plaintiff and Other Members the Class)

48.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

49.     Plaintiff brings this count on behalf of herself and other members of the Class.

50.     Defendants are merchants engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Class.

51.     At all times mentioned herein, Defendants manufactured or supplied the Protein, Supplements, Additives, and Drinks, and prior to the time the Protein, Supplements, Additives, and Drinks were purchased by Plaintiff and the Class, Defendants impliedly warranted to them that the Protein, Supplements, Additives, and Drinks were of merchantable quality, fit for their ordinary use (consumption by all ages of persons, particularly those seeking a health supplement), and conformed to the promises and affirmations of fact made on the Protein, Supplements, Additives, and Drinks' containers and labels, including that the food was natural, safe and appropriate for consumption by physically vulnerable persons. Plaintiff and

the Class relied on Defendant's promises and affirmations of fact when they purchased the Protein, Supplements, Additives, and Drinks.

52.     The Protein, Supplements, Additives, and Drinks were not fit for their ordinary use (consumption by all ages of persons, particularly those seeking a health supplement) and did not conform to Defendants' affirmations of fact and promises as they contained or were at risk of containing *Cronobacter Sakazakii* and/or other ingredients or contaminants that do not conform to the packaging.

53.     Defendants breached their implied warranties by selling Protein, Supplements, Additives, and Drinks that failed to conform to the promises or affirmations of fact made on the container or label as each product contained *Cronobacter Sakazakii* and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

54.     Plaintiff was on notice of this breach, as it was aware of the *Cronobacter Sakazakii* included or at risk of being included in the Protein, Supplements, Additives, and Drinks and based on the public investigation by Healthy All ages of persons, particularly those seeking a health supplement Bright Futures that showed Defendants' Protein, Supplements, Additives, and Drinks were unhealthy, contaminated and potentially dangerous, as well as the extensive press coverage of the investigation.

55.     Privity exists because Defendants impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing and labeling that the Protein, Supplements, Additives, and Drinks were suitable for consumption by all ages of persons, particularly those seeking a health supplement, and by failing to make any mention of *Cronobacter Sakazakii* or other harmful ingredients.

56.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Protein and Supplement that is worth less

than the price they paid given the risk of and/or actual contamination of products and that they would not have purchased at all had they known of the presence or risk of *Cronobacter Sakazakii* and/or other ingredients.

57.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION

### Fraudulent Misrepresentation

### (Plaintiff and Other Members the Class)

58.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

59.     Plaintiff brings this count on behalf of herself and other members of the Class.

60.     Defendants expressly represented and warranted that the Protein, Supplements, Additives, and Drinks were often vegan, immune supporting, and organic, and safe for consumption by humans, especially the physically vulnerable.

61.     Defendants intentionally, knowingly and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Protein, Supplements, Additives, and Drinks.

62.     Defendants knew that its representations about the Protein, Supplements, Additives, and Drinks were false in that the Protein, Supplements, Additives, and Drinks contained or were at risk of containing levels of *Cronobacter Sakazakii* or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements. Lyons Magnus allowed its packaging, labels, advertisements, promotional materials and websites to intentionally mislead consumers such as Plaintiff and the Class.

63.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Protein, Supplements, Additives, and Drinks to their detriment given the lesser value of the

product. Given the deceptive manner in which Defendants advertised, represented and otherwise promoted the Protein, Supplements, Additives, and Drinks, Plaintiff's and the Class's reliance on Defendants' misrepresentations was justifiable.

64.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Protein and Supplement that is worth less than the price they paid, which was a safe to consume product, and that they would not have purchased at all had they known of the presence or risk of *Cronobacter Sakazakii* or other unnatural ingredients that do not conform to the products' labels, packaging, advertising and statements.

65.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

## FOR A FOURTH COLLECTIVE CAUSE OF ACTION

### Fraud by Omission

### (Plaintiff and Other Members the Class)

66.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

67.     Plaintiff brings this count on behalf of herself and other members of the Class.

68.     Defendants knowingly and intentionally materially misrepresented and omitted, concealed from, and failed to disclose to Plaintiff and the Class that its Protein, Supplements, Additives, and Drinks contained, or were at risk of containing, *Cronobacter Sakazakii*, and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising and statements.

69.     Defendants had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability and risks of the Protein, Supplements, Additives, and Drinks because:

(1) Defendants was in a superior position to know the true state of facts about its products;

(2) Defendants was in a superior position to know the actual ingredients, characteristics and suitability of the Protein, Supplements, Additives, and Drinks for consumption by all ages of persons, particularly those seeking a health supplement; and

(3) Defendants knew that Plaintiff and the Class could not have reasonably been expected to learn or discover that the Protein, Supplements, Additives, and Drinks were misrepresented in the packaging, labels, advertising and websites prior to purchasing the Protein, Supplements, Additives, and Drinks.

70.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material in that a reasonable consumer would have considered the safety of the product important when deciding whether to purchase Protein, Supplements, Additives, and Drinks.

71.     Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the recall notice and true quality, characteristics and ingredients of the Protein, Supplements, Additives, and Drinks, which is inferior in comparison to Lyons Magnus's advertisements and representations of the Protein, Supplements, Additives, and Drinks.

72.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Protein and Supplement that is worth less than the price they paid given the potential harm to the consumer and that they would not have purchased at all had they known of the presence or risk of dangerous levels of *Cronobacter Sakazakii* and other bacteria.

73.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION

### Unjust Enrichment

### (Plaintiff and Other Members the Class)

74.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

75.     Plaintiff brings this count on behalf of herself and other members of the Class.

76.     Substantial benefits have been conferred on Defendants by Plaintiff and the Class through their purchase of the Protein, Supplements, Additives, and Drinks. Defendants knowingly and willingly accepted and enjoyed these benefits.

77.     Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Protein, Supplements, Additives, and Drinks would have the qualities, characteristics, ingredients and suitability for consumption as represented and warranted by Defendants. As such, it would be unjust for Lyons Magnus to retain the benefit of the payments under the circumstances.

78.     Defendants' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendants to retain the benefits and not return the value of payments made by Plaintiff and the Class.

79.     Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

80.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs and any other just and proper relief available.

### FOR A SEVENTH COLLECTIVE CAUSE OF ACTION

### Violation of The California Consumers Legal Remedies Act, Cal. Civ. Code §§1750 et seq.

### (Plaintiff and Other Members the Class)

81.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

82.     Plaintiff brings this count on behalf of herself and other members of the Class.

83.     The California Consumers Legal Remedies Act, prohibits, among other things:

"Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have"[6]

"Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"[7]

84.     Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of *Cronobacter Sakazakii* and in the Protein, Supplements, Additives, and Drinks, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion and sale of Protein, Supplements, Additives, and Drinks in violation of the CLRA.

85.     Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase the Protein, Supplements, Additives, and Drinks.

86.     Defendants failed to inform consumers that the Protein, Supplements, Additives, and Drinks contained unsafe levels of *Cronobacter Sakazakii* and/or other harmful ingredients. That information would have been material to any consumer deciding whether to purchase the Protein, Supplements, Additives, and Drinks.

87.     Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiff and the Class did rely on such statements and omissions.

---

[6] Cal. Civ. Code §1770(5).
[7] Cal. Civ. Code §1770(7).

88.     Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its California headquarters.

89.     Plaintiff and the Class suffered an ascertainable loss as a direct and proximate result of Defendants' violations of the CLRA.

90.     As a consequence of Defendants' wrongful actions, Plaintiff and the Class suffered an ascertainable monetary loss based on and measured by the price they paid for the Protein, Supplements, Additives, and Drinks, which they would not have paid in the absence of the aforesaid wrongdoing.

91.     Plaintiff and the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased the potentially not safe Protein, Supplements, Additives, and Drinks if the true facts concerning unsafe levels of *Cronobacter Sakazakii* and would have been known.

92.     Defendants' sale of Protein, Supplements, Additives, and Drinks containing unsafe levels of *Cronobacter Sakazakii* and for consumption by children was unconscionable, and the misrepresentations and omissions it made regarding the Protein, Supplements, Additives, and Drinks were made for the sole purpose of inducing consumers to purchase the Protein, Supplements, Additives, and Drinks to consume, irrespective of any health consequences. Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard or grossly negligent and reckless with respect to the life, health, safety, and well-being of persons consuming the Protein, Supplements, Additives, and Drinks. Defendants are therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

93.     By reason of the foregoing, Defendants are liable to Plaintiff and the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit Cal. Civ. Code § 1780.

94.     Plaintiff's further believe that the notice requirement of Cal. Civ. Code § 1780 was satisfied given that the suit was filed after the Defendants' recall of products, meaning the Defendant was already on notice of the defects of these products and already taking corrective action to the defects, which is the entire purpose of the notice requirement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against the Defendants as to each and every count including:

A.     An order declaring this action to be a proper class action, appointing Plaintiff and its counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.     An order enjoining Defendants from selling the Protein, Supplements, Additives, and Drinks until the levels of *Cronobacter Sakazakii* are removed or full disclosure of the presence of such appears on all labels, packing and advertising;

C.     An order enjoining Defendants from selling the Protein, Supplements, Additives, and Drinks in any manner suggesting or implying that they are healthy, natural and safe for consumption;

D.     An order requiring Defendants to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein and injunctive relief to remedy Defendants' past conduct;

F. An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair or fraudulent business act or practice, untrue or misleading advertising or a violation of law, plus pre- and post-judgment interest thereon;

G. An order requiring Defendants to disgorge or return all monies, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H. An order requiring Defendants to pay punitive damages on any count so allowable;

I. An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J. An order providing for all other such equitable relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: November 11, 2022


By: */s/ Eric M. Poulin*

**POULIN | WILLEY | ANASTOPOULO**
Eric M. Poulin (California Bar No. 298476)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email:
eric@akimlawfirm.com
blake@akimlawfirm.com
pauld@akimlawfirm.com